IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

HAROLD E. HAWKINS, JR. and
MARSHALL J. GREEN, JR.,

    *Defendants*.

Case No. 23-CR-10041-EFM

**MEMORANDUM AND ORDER**

Before the Court is a Motion to Dismiss Counts 31, 32 and 35 (Doc. 260) brought by Defendants Hawkins and Green (collectively, "Defendants").[1] Defendants were indicted for violating 18 U.S.C. § 922(g)(1), which prohibits convicted felons from possessing firearms and ammunition. Defendants challenge the facial and as-applied constitutionality of § 922(g)(1) on Second Amendment grounds in light of recent Supreme Court decisions. But because neither Supreme Court decision expressly abrogated controlling Tenth Circuit precedent on the issue, the Court denies Defendants' Motion to Dismiss.

    **I.**    **Factual and Procedural Background**[2]

On October 18, 2022, agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); agents with the Kansas Bureau of Investigation; and officers with the Wichita

---

[1] Defendant Hawkins initially filed Docs. 260, but Defendant Green later joined.

[2] The facts in this section are taken from the Government's Second Superseding Indictment (Doc. 113) and Response (Doc. 295).

Police Department executed federal search warrants at two residences in Wichita, Kansas. The first residence was located at 1214 W. Casado. In the weeks prior to the execution of the search warrant, law enforcement surveillance tracked Defendant Hawkins and Defendant Green going to the residence numerous times. Neither Defendant resided at 1214 W. Casado, and the surveillance indicated that the two would generally stay at the residence for only a few minutes.

During the search of 1214 W. Casado, ATF agents located more than 24 kilograms of fentanyl pills and more than 32 kilograms of methamphetamine. Most of these drugs were discovered in a large Rhino Metals safe located in the garage of that residence. ATF agents were able to determine that Defendant Hawkins purchased the safe from a store located in Park City, Kansas on September 20, 2022. The safe was then transported to 1214 W. Casado and installed in the garage.

In addition to controlled substances, ATF agents also recovered five firearms during the search. These included a Glock Model 23 pistol, a Glock Model 29 pistol, a Lorcin Model L9 pistol, an American Tactical ATI pistol, and a Ruger rifle. Several rounds of ammunition, in multiple calibers, were found as well.

Also on October 18, 2022, agents executed another search warrant at a second residence: 1911½ S. Everett. Before the execution of this search warrant, the investigation indicated that Defendant Hawkins resided at this location. For several days prior to the execution, Hawkins was on GPS monitoring as part of bond conditions for charges originating in Sedgwick County, Kansas District Court. Analysis of the GPS monitor data revealed Defendant Hawkins was located at 1911½ S. Everett on the day the search warrant was executed.

This residence was being utilized by Hawkins and Green as a manufacturing site to produce fentanyl pills. More than six kilograms of fentanyl pills were found at the residence. In addition,

agents seized four pill presses, hundreds of pounds of powder used to bind the pills during the pressing process, and dozens of dyes used to imprint the pills with logos or codes. Agents also located several rounds of ammunition in a variety of calibers.

The grand jury indicted Defendants on April 18, 2023. On September 6, 2023, the Government filed its Second Superseding Indictment, charging Defendants with three counts of violating 18 U.S.C. § 922(g)(1). Specifically, Count 31 charges Defendants with being felons in possession, or aiding and abetting felons in possession, of the firearms located at the Casado residence. Count 32 charges Defendants with being felons in possession of ammunition, or aiding and abetting felons who were possessing ammunition, at the Casado residence. Count 35 charges Defendants with being felons in possession of ammunition at the Everett residence.

On August 27, 2024, Defendant Hawkins filed a Motion to Dismiss Counts 31, 32, and 35 on Second Amendment grounds. That same day, Defendant Green filed a motion to join Defendant Hawkins's Motion to Dismiss. The Government responded to the Joint Motion to Dismiss on October 10, 2024. Neither Defendant filed a reply.

## II.     Legal Standard

Under Federal Rule of Criminal Procedure 12(b)(3), a defendant may "raise by pretrial motion any defense . . . that the court can determine without a trial on the merits," including "failure to state an offense."[3] "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense."[4]

---

[3] Fed. R. Crim. P. 12(b)(1), 12(b)(3)(B)(v).

[4] *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003).

Nonetheless, the Tenth Circuit has recognized that courts "may always ask 'whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offence' and dismiss the indictment if its allegations fail that standard."[5] As such, "the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion."[6] Instead, the indictment is tested "solely on the basis of the allegations made on its face, and such allegations are to be taken as true."[7]

When resolution of a constitutional issue would not "require a trial because it focuses solely on the facts alleged in the indictment and their legal adequacy," the court may rule on the motion.[8] This is because the court "may entertain motions that require it to answer only pure questions of law."[9]

### III.   Analysis

Defendants move to dismiss Counts 31, 32, and 35 of the Second Superseding Indictment, arguing that 18 U.S.C. § 922(g)(1) violates the Second Amendment after the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*[10] and *United States v. Rahimi*.[11]

A party "may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both."[12] "A facial challenge is a head-on attack on the legislative

---

[5] *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) (citing *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006)).

[6] *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994).

[7] *United States v. Qayyum*, 451 F.3d 1214, 1218 (10th Cir. 2006) (quoting *United States v. Reitmeyer*, 356 F.3d 1313, 1316 (10th Cir. 2004)).

[8] *Pope*, 613 F.3d at 1260 (citing *United States v. Sampson*, 371 U.S. 75, 78–80 (1962)).

[9] *Id.*

[10] 597 U.S. 1 (2022).

[11] 144 S. Ct. 1889 (2024).

[12] *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011).

judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications."[13] In contrast, "[a]n as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case."[14] Here, Defendants argue that § 922(g)(1) is unconstitutional both facially and as applied to their conduct.

In considering the Motion, this Court is bound by Tenth Circuit authority.[15] But because neither *Bruen* nor *Rahimi* expressly abrogated Tenth Circuit precedent on the issue, Defendants' arguments are foreclosed by controlling caselaw.

Section 922(g)(1) makes it "unlawful for any person[] who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition."

The Tenth Circuit first upheld the constitutionality of § 922(g)(1) in its 2009 decision, *United States v. McCane*.[16] The defendant in *McCane* argued that the Supreme Court's decision in *District of Columbia v. Heller*[17] meant that § 922(g)(1) was unconstitutional.[18] But because the Supreme Court explicitly stated in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," the Tenth Circuit rejected the defendant's argument and upheld the constitutionality of § 922(g)(1).[19]

---

[13] *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007).

[14] *Id.*

[15] *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990).

[16] 573 F.3d 1037 (10th Cir. 2009).

[17] 554 U.S. 570 (2008).

[18] *McCane*, 573 F.3d at 1047.

[19] *Id.* (quoting *Heller*, 554 U.S. at 626).

The Supreme Court's 2022 decision in *Bruen* followed *Heller*—although, *Bruen* established a new analytical framework which instructed courts to perform a "history and tradition" test to evaluate the constitutionality of gun restrictions.[20] After *Bruen*, the Tenth Circuit was again asked to consider the constitutionality of § 922(g)(1) in the 2023 case of *Vincent v. Garland*.[21]

The court in *Vincent* noted that although *Bruen* "created a new test for determining the scope of the Second Amendment, the [Supreme] Court didn't appear to question the constitutionality of longstanding prohibitions on the possession of firearms by convicted felons. If anything, *Bruen* contains two potential signs of support for these prohibitions."[22] "Given the six Justices' reaffirmation of the *Heller* language and the [Supreme] Court's apparent approval of 'shall-issue' regimes and related background checks," the Tenth Circuit determined that *Bruen* "did not indisputably and pellucidly abrogate our precedential opinion in *McCane*."[23] As a result, the Tenth Circuit followed *McCane* and again upheld the constitutionality of § 922(g)(1).[24]

In June 2024, the Supreme Court's decision in *United States v. Rahimi* upheld the constitutionality of 18 U.S.C. § 922(g)(8), which prohibited the possession of firearms and ammunition by persons subject to a restraining order for harassing, stalking, or threatening an intimate partner or such partner's child. Although *Vincent* did not address § 922(g)(8), the Court

---

[20] *Bruen*, 597 U.S. 1, 22.

[21] 80 F.4th 1197 (10th Cir. 2023), *cert. granted, judgment vacated*, 144 S. Ct. 2708 (2024).

[22] *Id.* at 1201.

[23] *Id.* at 1202.

[24] *Id.*

nonetheless vacated its judgment and remanded the matter to the Tenth Circuit "for further consideration in light of *United States v. Rahimi*."[25]

This remand, however, is not a final determination on the merits, an outright reversal, or a thinly veiled direction to this Court to alter its course.[26] Rather, it simply indicates that "intervening developments . . . reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the matter."[27] Notably, after *Rahimi*, the Supreme Court vacated *all* circuit court decisions considering § 922(g)(1)'s constitutionality. This included both circuit court decisions like *Vincent* and decisions that endorsed arguments like the ones Defendants make here.[28] Thus, the Supreme Court refrained from directly dictating the constitutionality of § 922(g)(1), instead leaving the matter open for further development by the lower courts consistent with its guidance in *Rahimi*.

Both *Bruen* and *Rahimi* reaffirmed the Supreme Court's rejection of several circuits' "'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny."[29] Specifically, the Supreme Court eliminated the second step, means-end scrutiny, finding that it was "one step too many."[30] Rather, the Supreme Court instructed that the

---

[25] *Vincent*, 144 S. Ct. at 2708.

[26] *See Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001) (noting that a Supreme Court grant, vacate, and remand order is not a final determination on the merits); *see also Gonzalez v. Justices of Mun. Ct. of Boston*, 420 F.3d 5, 7 (1st Cir. 2005); *Kenemore v. Roy*, 690 F.3d 639, 641 (5th Cir. 2012).

[27] *Wellons v. Hall*, 558 U.S. 220, 225 (2010) (further citations and quotations omitted).

[28] *See* Supreme Court Order List: 603 U.S. Certiorari Summary Dispositions, at 2–8 (July 2, 2024) https://www.supremecourt.gov/orders/courtorders/070224zor2co3.pdf (issuing grant, vacate, and remand orders to the Second, Third, Fifth, Eighth, and Tenth circuits for further consideration in light of *Rahimi*).

[29] *Bruen*, 597 U.S. at 17.

[30] *Id.* at 19.

correct test was that which was "set forth in *Heller* . . . to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."[31]

In *McCane*, however, the Tenth Circuit did not rely on means-end scrutiny to uphold § 922(g)(1). Instead, it relied on *Heller*'s explicit statement that nothing in the opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."[32] In *Vincent*, the court concluded that *Bruen* did not abrogate *McCane* for this same reason. Thus, although the Supreme Court vacated the judgment in *Vincent* and remanded the case in light of *Rahimi*, it did not question the merits of *McCane* or express any doubt about the Tenth Circuit's reasoning in *Vincent* when doing so.

Moreover, this Court finds persuasive the Tenth Circuit's recent decision in *United States v. Curry*,[33] where it found that *Rahimi* did not "indisputably and pellucidly abrogate" *McCane*, and it did not alter *Vincent*'s conclusion.[34] *Bruen* clarified the test for assessing Second Amendment challenges, and *Rahimi* applied *Bruen*'s test to a different federal firearm regulation than the one at issue here.[35] *Rahimi* clarified that it did not intend to "undertake an exhaustive analysis of the full scope of the Second Amendment,"[36] and the Supreme Court did not opine on § 922(g)(1) beyond reiterating that "prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'"[37]

---

[31] *Id.* at 27.

[32] *McCane*, 573 F.3d at 1047 (quoting *Heller*, 554 U.S. at 626).

[33] 2024 WL 3219693 (10th Cir. June 28, 2024) (unpublished).

[34] *Id.* at *4 n.7.

[35] *See Rahimi*, 144 S. Ct. at 1898–1902.

[36] *Id.* at 1903 (further citations, quotations, and ellipses omitted).

[37] *Id.* at 1902 (quoting *Heller*, 554 U.S. at 626, 627 n.26).

In sum, this Court finds that the order to remand *Vincent* cannot show any "reasonable probability" that the Tenth Circuit will reject *McCane* and come to a different "ultimate outcome" upon reconsideration. Such an outcome has not been the result in any circuit court post-*Bruen*.[38] Ultimately, *Rahimi* did not unequivocally overrule *McCane*, so *McCane* remains binding authority upon this Court. Accordingly, Defendants' facial and as-applied challenges to § 922(g)(1) are denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Counts 31, 32 and 35 (Doc. 260) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 12th day of November, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[38] *See United States v. Canada*, 103 F.4th 257, 258 (4th Cir. 2024) ("The law of the Second Amendment is in flux, and courts (including this one) are grappling with many difficult questions in the wake of [*Bruen*]. But the facial constitutionality of Section 922(g)(1) is not one of them. Indeed, no federal appellate court has held that Section 922(g)(1) is facially unconstitutional, and we will not be the first.").